**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **INDANEKWA HERRING**, | |
| Plaintiff, | |
| v. | Civil Action No. 7:19-CV-101 (HL) |
| **CITY OF THOMASVILLE, et al.** | |
| Defendants. | |

**ORDER**

Plaintiff Indanekwa Herring filed a Complaint against Defendants alleging violations of her constitutional rights under 42 U.S.C. § 1983. (Doc. 1). She also raises various state law tort claims.[1] (*Id.*). Before the Court are three motions to dismiss filed by Defendants. (Docs. 6, 8, 15). One motion was filed on behalf of Defendants Thomas County, members of the Thomas County Board of Commissioners, Sheriff R. Carlton Powell, and the Thomas County Sheriff's Office. (Doc. 6). The second motion to dismiss was filed by Defendants City of Thomasville, Greg Hobbs, Terry Scott, Cheryl Presha, Jay Flowers, David Hufstetler, Todd Mobley, Thomasville Police Department, and Troy Rich. (Doc. 8). Finally, Defendant Leighton King also filed a motion to dismiss. (Doc. 15). As to each defendant, the Court finds that Plaintiff has failed to state a claim. The

---

[1] Specifically, Plaintiff brings claims for intentional infliction of emotional distress, intentional infliction of harm, negligent infliction of emotional distress, and damage to reputation. (Doc. 1).

pending motions to dismiss are **GRANTED**. All of Plaintiff's claims are **DISMISSED**. The remaining discovery motions are **DISMISSED** as moot. (Docs. 16, 17).

## I.    FACTUAL BACKGROUND

On July 9, 2017, Plaintiff was a passenger in Daishamon Kimmons' vehicle. (Doc. 1, p. 7). Kimmons was driving in Thomasville, Georgia, while members of the Thomas County Narcotics Office pursued him in their law enforcement vehicles. (*Id.*). The Narcotics Office is a subdivision of the Thomas County Sheriff's Office. To bring Kimmons' vehicle to a stop, Defendant Leighton King crashed into Kimmons and Plaintiff. (*Id.* at pp. 7, 11). Defendant King is a law enforcement officer in the Thomas County Narcotics Office. (*Id.* at p. 7). Plaintiff alleges that at the time of the incident, Defendant King knew Plaintiff was in the car and yet decided to drive into Kimmons' vehicle. (*Id.* at p. 11). Upon impact, the vehicle overturned, and Plaintiff was ejected from the vehicle. (*Id.* at p. 8). She sustained significant injuries to her back, head, neck, and rib cage which required medical attention. (*Id.* at p. 9). Law enforcement arrested Plaintiff, and she was subsequently incarcerated at the Thomas County Jail. (*Id.* at p. 8).

## II.    MOTION TO DISMISS STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept the facts alleged in the plaintiff's complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff. *Brooks v. Warden*, 800 F.3d

1295, 1300 (11th Cir. 2015); *see* Fed. R. Civ. P. 12(b)(6). To avoid dismissal, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint need not contain detailed factual allegations, but it must provide "more than labels or conclusions." *Twombly*, 550 U.S. at 554. "Threadbare recitals" of a cause of action's elements, "supported by mere conclusory statements," are insufficient. *Iqbal*, 556 U.S. at 678.

### III.   DISCUSSION

Plaintiff's Complaint asserts that law enforcement officers unconstitutionally used excessive force by crashing into Kimmons' vehicle. (Doc. 1, p. 7). Plaintiff also contends that law enforcement made a false arrest of Plaintiff. (*Id.* at pp. 12–13). According to Plaintiff, Defendants' excessive use of force was evidence of an unlawful "pattern, practice, policy or custom." (*Id.* at p. 10). Plaintiff further alleges that Defendant Sheriff R. Carlton Powell negligently trained and hired members of the Thomas County Sheriff's Office—specifically Defendant King—which contributed to her injuries. (*Id.* at pp. 19–20). Finally, Plaintiff brings a myriad of state law tort claims that she alleges stem from the vehicle crash and her resulting injuries. (*Id.* at pp. 13–19, 21).

A. Thomas County Board of Commissioners and Thomasville City Council

Plaintiff names numerous parties as Defendants in this case. But the factual allegations regarding the crash and arrest only address a few of the named Defendants. Much of the Complaint is devoted to conclusory statements that merely recite the elements of the cause of action. *See Iqbal*, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."). Factual allegations against Defendants other than Defendant King are either sparse or nonexistent.

The Court finds that Plaintiff's Complaint fails to raise any factual allegations against Defendants who are members of the Thomasville City Council or the Thomas County Board of Commissioners. (Doc. 1). The Court accordingly dismisses the following Defendants:

- Greg Hobbs, Mayor of Thomasville and Terry Scott, Mayor Pro Tempore;

- Cheryl Presha, Jay Flowers, Davis Hufstetler, and Todd Mobley, members of the Thomasville City Council; and

- Jeremy Rich, Moses Gross, Kenneth Hickey, Mark NeSmith, Donnie Baggett, Wiley Grady, Phillip Brown, and Zippy Vonier, members of the Thomas County Board of Commissioners.

Plaintiff has not alleged any wrongdoing committed by these defendants. She merely names them as parties at the beginning of her Complaint and includes their addresses for service of process. The Complaint does not mention these defendants again, much less allege how their conduct contributed to Plaintiff's injuries. Furthermore, to the extent that Plaintiff intends to challenge the excessive force policy of the local governments, she may do so through Defendants City of Thomasville and Thomas County. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent . . . ."). To keep the City of Thomasville, Thomas County, "and the officers sued in their official capacity as defendants in this case would [be] redundant and possibly confusing to the jury." *Id.* Accordingly, the city and county officials named above are **DISMISSED**.

B.  Municipal Liability

Plaintiff's Complaint alleges that the City of Thomasville and Thomas County contributed to Defendant King's constitutional violations because the municipalities had an unconstitutional policy or custom of condoning excessive force by law enforcement.[2] (Doc. 1, p. 10). Municipalities may be subject to

---

[2] Plaintiff's Complaint is unclear which specific defendants she alleges maintained an unconstitutional use-of-force policy or custom. (Doc. 1, pp. 10–12). She refers only to "Defendants" generally. (*Id.*). The Court construes her claim as against the named municipal defendants because Count II of her Complaint alleges elements to establish municipal liability. *See Monell v. Dep't of*

5

liability under § 1983. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 695 (1978). Local governments, however, "can never be liable under § 1983 for the acts of [officials] that local government has no authority to control." *Turquitt v. Jefferson Cty.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (en banc). The "local government 'must have power in an area in order to be held liable for an official's acts in that area.'" *Id.* (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1578 (11th Cir. 1996)). Thus, when imposing municipal liability, courts ask which government body under state law had control over the function at issue. *Grech v. Clayton Cty.*, 335 F.3d 1326, 1331 (11th Cir. 2003) (en banc); *see Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[L]ocal governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." (internal quotation marks and citation omitted)). Because Plaintiff attributes her constitutional injuries to law enforcement officers, the Court will examine whether, under Georgia law, Thomas County or the City of Thomasville have control over those officers.

### 1. Thomas County

Defendant King and other members of the Thomas County Sheriff's Office are named as allegedly using excessive force when crashing into the vehicle in which Plaintiff was a passenger. (Doc. 1). When imposing municipal liability, a

---

*Soc. Servs. of New York*, 436 U.S. 658, 690 (1978) ("[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . .").

"sheriff's policy or act cannot be said to speak for the county if the county has no say in what policy or action the sheriff takes." *Grech*, 335 F.3d at 1347. Defendant King's conduct at issue relates to his law enforcement duties. The Eleventh Circuit has consistently found that sheriffs act on behalf of the state of Georgia when performing their law enforcement functions. *See Manders v. Lee*, 338 F.3d 1304, 1313 (11th Cir. 2003) (en banc) ("[T]he sheriff directly represents the sovereignty of the State, has no superior in his county, and performs state functions for the sovereign in enforcing the laws and keeping the peace."); *Grech*, 335 F.3d at 1336 ("[C]ounties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function."). Additionally, regarding Defendant King, "Georgia courts have concluded that sheriffs' deputies are employees of the sheriff and not the county." *Id.* Should Thomas County oppose Defendant King's actions, the county would be powerless to discharge him. *See Bd. of Comm'rs of Randolph Cty. v. Wilson*, 260 Ga. 482, 483 (1990) ("[T]he [county] board of commissioners cannot discharge the sheriff's deputies.").

The county's limited authority over the sheriff does not extend to the sheriff's policy choices. "[T]he county commission" issues the sheriff's budget, but it "may not dictate to the sheriff how that budget will be spent in the exercise of his duties." *Chaffin v. Calhoun*, 262 Ga. 202, 203 (1992). Accordingly, the Court finds that Defendant Thomas County lacks control over the Thomas County Sheriff's Office, including Defendant King. The county had no authority to

set policy in the Thomas County Sheriff's Office, and it could not control Defendant King or his law enforcement practices. Under such circumstances, Thomas County has no § 1983 liability. Plaintiff's claims against Thomas County are **DISMISSED**.

### 2. City of Thomasville

Plaintiff can sue the City of Thomasville for acts of its police department. *See Depew v. City of St. Marys*, 787 F.2d 1496, 1499–1501 (11th Cir. 1986) (finding city liable for its officers' excessive use of force). Georgia law allows municipal corporations to establish local agencies and "to define, regulate, and alter the powers . . . of all [its] municipal officers, agents, and employees." O.C.G.A. § 36-34-2.[3] Thomasville's municipal code empowers the city council to "create, alter, or abolish departments," and such departments operate only with "the powers conferred upon or delegated" to them by the council. Thomasville, Ga., Code ch. 99, art. I, § 1.12(b)(16). Furthermore, Thomasville's code specifically provides the city council power "to establish, operate or contract for a police agency." Thomasville, Ga., Code ch. 99, art. I, § 1.12(b)(25). And the city manager appoints the chief of police. Thomasville, Ga., Code ch. 99, art. III, § 3.12. Finally, Thomasville's code includes a catchall provision authorizing the city

---

[3] Title 36 of the Georgia Code, named "Local Government," distinguishes between counties and municipal corporations. The municipal corporation is defined as a "city," "town," "municipality," or "village." O.C.G.A. § 36-30-1. Although throughout this Order the Court refers to § 1983 municipal liability generally, the Georgia code provision quoted here applies only to cities.

council to promulgate "ordinances, policies, and rules and regulations as shall appear necessary." Thomasville, Ga., Code ch. 99, art. I, § 1.12(b)(22). In short, the City of Thomasville has authority to control and set policy for its police department. The city, therefore, may be subject to municipal liability for acts of the Thomasville Police Department.

Nevertheless, the Court finds that Plaintiff's Complaint fails to state a claim against the City of Thomasville. (Doc. 1). To establish her excessive force claim, Plaintiff points to the conduct of law enforcement officers from the Thomas County Narcotics Office—a subdivision of the Thomas County Sheriff's Office. (*Id.* at p. 7). Later in her Complaint, she specifies that Defendant King—a member of the Narcotics Office—was the officer who crashed into Kimmons' vehicle. (*Id.* at pp. 11, 14, 15). She does not allege that any members of the Thomasville Police Department participated in the crash. Even assuming that Defendant King did violate Plaintiff's constitutional rights, his conduct would not implicate the City of Thomasville. Defendant King was not bound to the city's use-of-force policies, and he did not participate in the city's customs. Plaintiff's claims against the City of Thomasville are **DISMISSED**. To the extent that Plaintiff intended to sue Defendant Troy Rich, Chief of Thomasville Police, as a

policymaker for either the City of Thomasville or its police department, those claims are also **DISMISSED**.[4]

### C. Thomas County Sheriff's Office and Thomasville Police Department

Defendants Thomas County Sheriff's Office and Thomasville Police Department's motions to dismiss argue that these defendants are not legal entities capable of being sued. (Doc. 6-1, pp. 4–5); (Doc. 8-1, p. 7). The capacity to sue entities is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Georgia law recognizes "only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." *Ga. Insurers Insolvency Pool v. Elbert Cty.*, 258 Ga. 317, 318 (1988) (quoting *Cravey v. Se. Underwriters Ass'n*, 214 Ga. 450, 453 (1958)). The Eleventh Circuit has commented that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit," *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992), and followed this precedent in subsequent unpublished opinions. *See Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (finding no error in district court's conclusion that police department was not a legal entity); *Lovelace v. Dekalb Cent. Prob.*, 144 F. App'x 793, 795 (11th Cir. 2005) (same). The Middle District of Georgia has also recently recognized

---

[4] Plaintiff's Complaint merely names Defendant Rich as a defendant in this suit. She asserts no specific factual allegations against him.

that "police departments[] and sheriff's departments are not legal entities subject to suit." *Yashara'l v. John*, No. 5:19-CV-497 (MTT), 2020 WL 184920, at *1 (M.D. Ga. Jan. 13, 2020). This Court will not depart from these decisions and, therefore, finds that Defendants Thomas County Sheriff's Office and Thomasville Police Department are not subject to suit. Accordingly, Plaintiff's claims against those defendants are **DISMISSED**. She may maintain her allegations against individual members of the sheriff and police departments, such as Defendant King.

        D. Leighton King

     Defendant King's motion to dismiss contends that the Eleventh Amendment renders him immune from Plaintiff's suit. (Doc. 15-1, pp. 4–5). The Eleventh Amendment bars suits against state employees sued in their official capacity for actions relating to their employment. *See Manders*, 338 F.3d at 1308 ("Eleventh Amendment immunity bars suits brought in federal court when the State itself . . . [or] an 'arm of the state' is sued.") (en banc); *Kentucky v. Graham*, 473 U.S. 159, 163–68 (1985) (distinguishing "between personal- and official-capacity suits"). These official-capacity suits are "treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The State's sovereign immunity then shields state employees from suit in federal court. *See Graham*, 473 U.S. at 167 ("[I]mmunities that can be claimed in an official-capacity action are forms of sovereign immunity . . . such as the Eleventh Amendment."). State employees

11

sued in their individual capacity, however, do not receive the Eleventh Amendment's protection. *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). Individual-capacity suits seek recovery from the individual defendant rather than the state entity that employs him, so sovereign immunity is not implicated. *Graham*, 473 U.S. at 167–68.

Plaintiff's Complaint indicates that she intends to sue Defendant King "in his capacity as Narcotics Officer of Thomas County Sheriff's Department." (Doc. 1, p. 7). The Court interprets this as an official-capacity suit. To receive immunity from Plaintiff's official-capacity claims, Defendant King must have acted "as an 'arm of the State.'" *Manders*, 338 F.2d at 1308. As discussed above, the Supreme Court is clear that § 1983 claims remain viable against "municipalities and other local government units." *Monell*, 436 U.S. at 690; *see also Stanley v. Israel*, 843 F.3d 920, 924 (11th Cir. 2016) ("[T]he Eleventh Amendment does not immunize municipalities from suit."). Therefore, the Eleventh Amendment bars Plaintiff's official-capacity claims against Defendant King only if he acted as an arm of the state of Georgia when the allegedly illegal conduct occurred. If Defendant King acted as an arm of Thomas County, Plaintiff's claims survive the Eleventh Amendment's bar.

That Defendant King is a member of the Thomas County Sheriff's Office, instead of a state-wide position, does not automatically deny him Eleventh Amendment protection. *Manders*, 338 F.3d at 1308. Defendant King's job title or

status carries little weight in the Court's analysis. *Id.* ("[A] defendant need not be labeled a 'state officer' or 'state official' . . . ."). The Court focuses on what function the defendant performed at the time his allegedly illegal conduct occurred. *Id.* Here, the particular function at issue concerns Defendant King's law enforcement duties, and specifically, how he executed Plaintiff's arrest.

In *Manders*, a four-factor test emerged to analyze a defendant's specific function and whether that function represents an arm of the State. *See Stanley*, 843 F.3d at 924 (discussing the progression of arm-of-the-state analysis). The four factors the Court considers are: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309. When applying those factors, the Court evaluates both the governmental structure of the sheriff's office in relation to the State and the actor's particular functions at issue. *Lake v. Skelton*, 840 F.3d 1334, 1337–38 (11th Cir. 2016). The Court relies on Georgia law to illustrate how the State governs Defendant King and the Thomas County Sheriff's Office.

### 1. Governmental Structure

The state of Georgia "exerts significant control" over county sheriffs. *Id.* at 1338. Georgia's Constitution created the sheriff's office. Ga. Const. art. IX, § 1, ¶ III. Where Georgia's Constitution affords governing authority to counties, it explicitly declines to extend the county's power to the sheriff's office. Ga. Const.

13

art. IX, § 2, ¶ I(c)(1) (establishing "[h]ome rule for counties"). "[T]he sheriff's office is a separate constitutional office independent" from the county and "its governing body." *Manders*, 338 F.3d at 1310. Sheriffs are not county employees. *Id.* (citing *Bd. of Comm'rs of Randolph Cty.,* 260 Ga. at 482 ("The sheriff . . . is subject to the charge of the General Assembly and is not an employee of the county commission.")). And the State legislature has "the exclusive authority to establish and to control a sheriff's powers and duties." *Id.*; *see* Ga. Const. art. IX, § 1, ¶ III(a)–(c).

Although the Eleventh Circuit calls the sheriff "separate and independent" from the county, the inquiry is complicated. *Manders*, 338 F.3d at 1319. Georgia's Constitution refers to sheriffs as "County officers." Ga. Const. art. IX, § 1, ¶ 3(a). County residents elect their local sheriff. *Id.* And the county funds the sheriff's budget. *See Chaffin*, 262 Ga. at 203 ("[T]he county commission has the power and the duty to issue a budget."). Nonetheless, the Eleventh Circuit has concluded that "only the State controls and grants powers and duties to sheriffs." *Manders*, 338 F.3d at 1312. The title "county officers" merely reflects the sheriff's "geographic jurisdiction in the State." *Id.* And sheriffs "act on behalf of the State in enforcing the laws and keeping the peace in that jurisdiction." *Id.* The foregoing analysis of Georgia law demonstrates State control over the sheriff's office, where Defendant King is employed. Against this background, the Court next

14

examines Defendant King's particular function at issue—performing his law enforcement duties and executing arrests.

2. <em>Manders</em> Factors

The *Manders* factors weigh in favor of immunity for Defendant King. The first three factors favor immunity. The fourth factor, responsibility for judgments, weighs against Defendant King's immunity, but it alone "does not defeat immunity." *Lake*, 840 F.3d at 1344 (quoting *Manders*, 338 F.3d at 1329).

a.  How State Law Defines the Function

The first factor is how state law defines the function at issue. *Id.* at 1339. State law assigns the sheriff's office "specific statutory duties" in law enforcement, state courts, and corrections. *Manders*, 338 F.3d at 1312. Relevant to Defendant King's motion to dismiss are the sheriff's duties in law enforcement. In Georgia, the sheriff's office "carries with it the common law duties of sheriffs to enforce the laws and preserve the peace on behalf of the sovereign State, as well as other specific statutory duties imposed by the State legislature." *Id.*; *see* O.C.G.A. § 15-16-10. "[C]ounties cannot, and do not delegate any law enforcement power or duties to sheriffs." *Manders*, 338 F.3d at 1313.

Sheriff's deputies, such as Defendant King, aid sheriffs in performing their law enforcement duties. *See Teasley v. Freeman*, 305 Ga. App. 1, 4 (2010) ("[D]eputies serve as the sheriff's agent . . . ."). "A deputy's functions are derived from the sheriff's function." *Lake*, 840 F.3d at 1342. And because Georgia law

15

defines law enforcement as a State function, "the deputy's performance of this function is also a state function." *Id.* The first factor of the *Manders* analysis, thus, favors immunity for Defendant King.

b.  Where State Law Vests Control

The second factor in the Eleventh Amendment analysis asks where Georgia law vests control over the function. *Id.* at 1342–43. Georgia sheriffs and their deputies have general police power "to make arrests, to maintain the peace[,] and to enforce the law." *Chaffin*, 262 Ga. at 203 (discussing a sheriff's "statutory duties" and "those duties that 'necessarily appertain to his office'" (quoting O.C.G.A. § 15-16-10(a)(8)). Georgia law permits sheriffs to use deadly force when carrying out an arrest if certain circumstances are met. O.C.G.A. § 17-4-20(b). Georgia law also specifically prohibits local governments from adopting or promulgating "any rule, regulation, or policy" which would forbid the use of deadly force to arrest individuals suspected of committing felonies. O.C.G.A. § 17-4-20(d).

Georgia law not only empowers sheriffs to use deadly force but also restricts when its use is appropriate. In contrast, local governments are specifically prohibited from forbidding deadly use of force. Therefore, control over how sheriffs and their deputies perform their law enforcement function resides with the State. At the time Plaintiff was arrested, Thomas County had no control

16

over the sheriff or Defendant King. The second *Manders* factor tilts in favor of Defendant King's immunity.

### c.  Source of Funds

The third factor in the Eleventh Amendment analysis is the source of funding for the function at issue. *Lake*, 840 F.3d at 1343.

Most of the funding attributable to Defendant King's role in Plaintiff's injury comes from general state law requirements that compel the county to provide "the personnel and equipment necessary to enable the sheriff to perform his duties." *Chaffin*, 262 Ga. at 203 (quoting *Wolfe v. Huff*, 233 Ga. 162, 163 (1974)). The county funds the sheriff's budget as well as the sheriff's salary. *See id.* ("[T]he county commission has the power and the duty to issue a budget."). Thus, the county funded Defendant King's physical acts that contributed to Plaintiff's injuries. *See, e.g.*, O.C.G.A. §§ 15-16-20, 15-16-20.2. But while the county "must provide reasonably sufficient funds to allow the sheriff to discharge his legal duties," the county "may not dictate" how the sheriff spends that budget. *Manders*, 338 F.3d at 1324 (quoting *Chaffin*, 262 Ga. at 203–04); *see Pellitteri v. Prine*, 776 F.3d 777, 782 (11th Cir. 2015) ("[A]lthough each county sets the total budget for the sheriff's office, it cannot dictate *how* the sheriff spends those funds."). In other words, the county paying for Defendant King's salary or the sheriff's budget does not bear on Defendant King's law enforcement duties or his performance of those duties. The county cannot "indirectly, by the exercise of [its]

fiscal authority and [its] control of the county property" obstruct or interfere with the sheriff's state law duties. *Chaffin*, 262 Ga. at 203.

On the other hand, "[t]he State funds the annual training of sheriffs," which would have informed how Defendant King performed his law enforcement duties. *Manders*, 338 F.3d at 1323; *see* O.C.G.A. § 15-16-3(d) ("The cost of training . . . shall be paid . . . from state funds appropriated for such purpose."). The annual training focuses on "law enforcement [and] investigation." O.C.G.A. § 15-16-3(a). This training would influence how the Thomas County Sheriff formulated his use-of-force policy and how that policy was instructed to his deputies. *See Manders*, 338 F.3d at 1320 ("It is reasonable to assume that such training includes instruction on force policy and hiring and training deputies."). Therefore, the State's funding of the annual training would affect how Defendant King carries out an arrest. Considering the county's funding of the sheriff's budget—but lacking control over policy—alongside the State's funding of annual sheriff training, the Court finds that the source-of-funds factor tilts in favor of Defendant King's immunity.

### d.    Responsibility for Adverse Judgments

The fourth factor of the Eleventh Amendment analysis asks whether the state or county would be responsible for an adverse judgment against Defendant King. *Lake*, 840 F.3d at 1344. Preventing the state's treasury from paying out federal court judgments was the "impetus for the Eleventh Amendment." *Hess v.*

*Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994). The Supreme Court recognizes that this factor is "the most salient factor in Eleventh Amendment determinations." *Id.*; *see Freyre v. Chronister*, 910 F.3d 1371, 1384 (11th Cir. 2018) (calling liability-for-adverse-judgment factor "the most important of the *Manders* calculus"). But state responsibility is not a "per se condition" of immunity, and this factor is not dispositive. *Manders*, 338 F.3d at 1328 ("Never has the Supreme Court required an actual drain on the state treasury as a per se condition of Eleventh Amendment immunity.").

In Georgia, neither the county nor the State directly pays to satisfy judgments against the sheriff. *Lake*, 840 F.3d at 1344. The sheriff pays any adverse "judgment against him in his official capacity out of the budget of the sheriff's office, which implicates both county and state funds." *Id.* (quotation marks omitted).[5] This fact weighs "heavily against" Defendant King's arm-of-the-state status. *See Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1313 (11th Cir. 2005) ("[E]ven if the county ultimately may not be held liable for a judgment against the sheriff, the fact that the state is not liable either weighs heavily against extending the state's Eleventh Amendment immunity to

---

[5] The county would indirectly satisfy the judgment because it pays the sheriff's budget. If the sheriff is liable for a significant adverse judgment, "the practical reality" is that the sheriff would recoup the budget's losses from State funding. *Manders*, 338 F.3d at 1327 ("[B]oth county and state funds are implicated because [the sheriff] would need to seek a greater total budget from the county for his office and a greater daily rate from the State for felony offenders serving their state sentences in county jail.").

the challenged conduct by the sheriff."). Nevertheless, the Eleventh Circuit instructs that when "both county and state funds indirectly are implicated," the liability-for-adverse-judgment "factor does not defeat immunity." *Manders*, 338 F.3d at 1329; *Lake*, 840 F.3d at 1344 ("[T]he application of the fourth factor in this appeal is resolved by *Manders*.").

The Court necessarily considers the fourth factor alongside the other three *Manders* factors, and while the final factor may be "most important" in Eleventh Amendment analysis, the Court finds that in light of the other factors favoring immunity, the liability-for-adverse-judgment factor does not defeat Defendant King's immunity. The Court concludes that the four *Manders* factors together support Eleventh Amendment immunity. Therefore, immunity bars Plaintiff's § 1983 and state law official-capacity claims against Defendant King.[6] *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (holding that Eleventh Amendment immunity also bars "state-law claims brought into federal court under pendent jurisdiction"). Plaintiff has not alleged any claims against Defendant King in his individual capacity. Accordingly, Defendant King is **DISMISSED** from this suit.

---

[6] Throughout her Complaint, Plaintiff refers only to "Defendants" generally. The Court construed Plaintiff's state law claims as against both Defendant King and Defendant Powell because in Counts IV and VI, she specifically alleges factual allegations against Defendant King, as an employee of the Thomas County Sheriff's Office. (Doc. 1, p. 14). Plaintiff's Complaint does not allege which specific Defendants are at fault for her other state law claims. (Doc. 1, pp. 13–17, 21). However, she alleges that these claims arise from injuries sustained in the vehicle crash.

E.  Sheriff R. Carlton Powell

Plaintiff brings a § 1983 claim against Defendant R. Carlton Powell for his allegedly negligent hiring and training of Defendant King. (Doc. 1, p. 19). Plaintiff asserts his claims against Defendant Powell in his official capacity as Thomas County Sheriff. (*Id.*). Like Defendant King, Defendant Powell also contends that the Eleventh Amendment bars Plaintiff's claims against him. (Doc. 6-1, pp. 5–7). The Court has already discussed at length the arm-of-the-state Eleventh Amendment jurisprudence as it relates to sheriffs. *See, e.g.*, *Manders*, 338 F.3d at 1308–25; *Lake*, 840 F.3d at 1339–44. Analysis of the third and fourth *Manders* factors—the source of funds and responsibility for adverse judgments—is equally applicable to Defendant Powell as it was to Defendant King. The Court will not restate its analysis of those factors. Additionally, the first two *Manders* factors favor immunity for Defendant Powell. Georgia law defines a sheriff's personnel decisions as a function serving the State, and state law gives control of such decisions exclusively to the sheriff. *See Grech*, 335 F.3d at 1336 ("[S]heriffs exercise authority over their deputies independent from the county."). Simply, "sheriffs' deputies are employees of the sheriff and not the county." *Id.*

Regarding hiring, the Eleventh Circuit has specifically found that "the authority of sheriffs to employ personnel is . . . derived from the State." *Pellitteri*, 776 F.3d at 780. "[S]heriffs alone [have] the power to hire their deputies, independent of any influence from county governments." *Id.*; *see* O.C.G.A. § 15-

16-23 ("Appointment of deputy"). The first *Manders* factor, how state law defines the function, therefore favors immunity. As to the second factor, where state law vests control, the Eleventh Circuit has concluded "that the State of Georgia exercises substantial control over a sheriff's personnel decisions, especially in the hiring and firing of deputies." *Pellitteri*, 776 F.3d at 781. As discussed above, the State, through its legislature, sets forth the sheriff's statutory duties. *See* O.C.G.A. § 15-16-10. Sheriffs then "select deputies to assist them in executing their own duties." *Pellitteri*, 776 F.3d at 782. Thus, sheriffs hire deputies in pursuit of fulfilling their state law duties. In other words, sheriffs exercise their hiring power to serve the State, and such personnel decisions reside within the State's control. *See Abusaid*, 405 F.3d at 1310 ("[T]he key question is not what . . . powers sheriffs have, but *for whom* sheriffs exercise that power." (quoting *Manders*, 338 F.3d at 1319 n.35)).

Similarly, training deputies also serves the sheriff's state-mandated law enforcement duties. "Counties . . . have no role in the training or supervision of the sheriff's deputies." *Grech*, 335 F.3d at 1336. Moreover, if a sheriff fails to comply with the annual training requirements discussed above, the Governor "may suspend the sheriff without pay for ninety days." *Id.* The annual training's focus on "law enforcement [and] investigation" likely extends to instruction on supervision and training of sheriff's deputies. O.C.G.A. § 15-16-3(a). *See Manders*, 338 F.3d at 1320 ("It is reasonable to assume that such training

22

includes . . . hiring and training deputies."). In contrast, the county exerts no influence over the training of deputies.

Considering together the four *Manders* factors, the Court concludes that Defendant Powell's specific functions at issue—hiring and training Defendant King—were performed on behalf of the State and without county control or influence. The Eleventh Amendment bars Plaintiff's official-capacity claims against Defendant Powell, including her § 1983 and state law claims.[7] Plaintiff has not sued Defendant Powell in his individual capacity. Defendant Powell is **DISMISSED** from this suit.

## IV.   CONCLUSION

Plaintiff has failed to state a claim against all Defendants. Accordingly, Defendants' three motions to dismiss are **GRANTED**. (Docs. 6, 8, 15). The pending discovery motions are **DISMISSED** as moot. (Docs. 16, 17).

**SO ORDERED**, this 21st day of July, 2020.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

kac

---

[7] Throughout her Complaint, Plaintiff refers to "Defendants" generally. The Court construed Plaintiff's state law claims as against both Defendant King and Defendant Powell because in Counts IV and VI, she specifically alleges factual allegations against Defendant King, as an employee of the Thomas County Sheriff's Office. (Doc. 1, p. 14). Plaintiff's Complaint does not allege which specific Defendants are at fault for her other state law claims. (Doc. 1, pp. 13–17, 21). Nevertheless, she alleges that those claims arise from injuries sustained in the vehicle crash.